Brian L. Wamsley (BW 1439)
Brian E. Pastuszenski
(pro hac vice admission pending)
Deborah S. Birnbach
(pro hac vice admission pending)
GOODWIN PROCTER LLP
599 Lexington Avenue
New York, New York 10022
Telephone: (212) 813-8800
*Attorneys for Plaintiff*
*Arbinet-thexchange, Inc.*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ARBINET-THEXCHANGE, INC. | |
| Plaintiff, | Civil Action No. |
| v. | |
| ALEXANDER MASHINSKY AND ROBERT MARMON, | |
| Defendants. | |

**VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF**

Plaintiff, Arbinet-thexchange, Inc., by and through its undersigned counsel, files this Complaint against Alexander Mashinsky and Robert Marmon for their unlawful misappropriation and misuse of Arbinet's confidential strategic planning information. Each of the Defendants formerly held positions of trust with Arbinet, and despite those roles, stole Arbinet's highly confidential information and used it for their own purposes, and have disclosed it to certain third party institutional investors. This Verified Complaint seeks to stop Defendants' unlawful use of this sensitive business information they stole from Arbinet, and to require Defendants to return Arbinet's property to it. Unless Defendants are enjoined from further

misappropriation and misuse of Arbinet's confidential information, Arbinet will be irreparably harmed by Defendants' disclosure of this confidential information. Arbinet alleges as follows:

## NATURE OF ACTION, JURISDICTION AND VENUE

1. This is an action seeking equitable relief for breach of contract, breach of fiduciary duty, misappropriation of trade secrets and confidential information, aiding and abetting breach of fiduciary duty, tortious interference with contractual obligations and copyright infringement.

2. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 in that there is complete diversity of citizenship between the parties and the amount in controversy is greater than $75,000.

3. Venue is appropriate pursuant to 28 U.S.C. § 1391 in that a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

4. This Court may exercise personal jurisdiction over Defendants Mashinsky and Marmon (collectively the "Defendants") as they transact business in New Jersey, and they have taken action in New Jersey that gives rise to the causes of action stated herein.

## PARTIES

5. Plaintiff Arbinet-thexchange, Inc. ("Arbinet" or the "Company") is a corporation organized pursuant to the laws of the State of Delaware, with its principal place of business located at 120 Albany Street, Tower II, Suite 450, New Brunswick, New Jersey. Arbinet is the leading market for trading, routing and settling communications capacity. Its customers consist primarily of communications service providers who buy and sell voice calls and Internet capacity through its centralized, liquid marketplace. Arbinet's initial public offering ("IPO") took place in December 2004 and the Company continues to expand into new markets as the communications services industry evolves.

6. Upon information and belief, Defendant Mashinsky is a natural person and citizen with domiciles in the states of New York and Tennessee. Defendant Marmon is a natural person and citizen of the commonwealth of Pennsylvania.

## FACTUAL ALLEGATIONS
## COMMON TO ALL CLAIMS

### Defendants Fiduciary Roles at Arbinet

7. In November 1996, Defendant Mashinsky formed Arbinet, formerly known as Smartgroup Holdings, Inc and later as Arbinet Holdings, Inc., and acted as its Chief Executive Officer and Chairman of the Board of Directors ("Board of Directors") until June 1999. He remained on the Board of Directors until his resignation on May 6, 2004, was the Vice Chairman of the Board of Directors and a highly paid consultant. In his role as a Board member, Defendant Mashinsky owed fiduciary duties of loyalty and confidentiality to Arbinet.

8. Defendant Mashinsky received and had access to confidential and trade secret information in his capacity as an employee, a director, and a consultant to Arbinet, including but not limited to, the document described in paragraphs 15-20 below.

9. The Company's records show that Defendant Marmon was a member of the Board of Directors of Arbinet Holdings, Inc, which, through a name change, became Arbinet.

### Arbinet's Contractual Relationships with Defendant Mashinsky

10. On November 8, 2003, Defendant Mashinsky entered into a Consulting Agreement ("Consulting Agreement") with Arbinet in which he agreed to perform business consulting services as needed. The Consulting Agreement specifically provides under Section 8(a), entitled "Confidentiality" that Defendant Mashinsky agreed that "he will not disclose to any third party

3

or use in any way … any proprietary information or confidential records" of the Company, including without limitation:

> (i) the software products, programs, applications and processes utilized by the Company (other than pre-packaged "off the shelf" products); (ii) the name and/or address of any customer or affiliate of the Company or any information concerning the transactions or relations of any customer, vendor or affiliates of the Company with the Company or any of its partners, principals, stockholders, directors, officers or agents; (iii) any information concerning any product, technology, or procedure employed by the Company but not generally known to its customers, vendors or competitors, or under development by or being tested by the Company but not at the time offered by the Company generally to customers or vendors; (iv) any information relating to the Company's computer software, computer systems, pricing or marketing methods, sales margins, cost of goods, cost of material, capital structure, operating results, borrowing arrangements or business plans; (v) *any information which is generally regarded as confidential or proprietary in any line of business engaged in by the Company*; (vi) any business plans, budgets, advertising or marketing plans; (vii) any information contained in any of the Company's written or oral policies and procedures or manuals; (viii) any information belonging to customers, vendors or affiliates of the Company or any other person or entity that the Company has agreed to hold in confidence; (ix) any inventions, innovations or improvements covered by this Agreement; and (x) all written, graphic and other material relating to any of the foregoing. Mr. Mashinsky acknowledges and understands that information that is not novel or copyrighted or patented may nonetheless be proprietary information. . . . . Immediately upon termination of Mr. Mashinsky's services under this Agreement or at any other time upon the Company's request, *Mr. Mashinsky will return to the Company all personal property* (including without limitation, all files, records, documents, lists, equipment, supplies, promotional materials, keys, phone or credit cards and similar items and all copies thereof or extracts therefrom) *and confidential records of the Company*. For purposes of this Agreement, "confidential records" means all correspondence, memoranda, files, manuals, books, lists, financial, operating or marketing records, magnetic tape, or electronic or other media or equipment of any kind. (emphasis added).

11. On July 9, 2004, Defendant Mashinsky entered into a Settlement Agreement ("Settlement Agreement") with Arbinet. Section 1(d) of that agreement expressly kept active and in full force and effect Mashinsky's confidential obligations to Arbinet under the Consulting Agreement. As part of the Company's efforts to protect its confidential information, Arbinet ensured in these agreements that Defendant Mashinsky has a continuing obligation to safeguard

4

Arbinet's proprietary and confidential information.  Defendant Mashinsky received and had access to a significant amount of confidential information of Arbinet during his work for the Company, as an executive officer and while he was on the Board of Directors, including patent applications, technology specifications, and other intellectual property information, financial information, marketing strategy information, internal analyses of Arbinet's markets, businesses, and customers.  In his role as a Board member he routinely received information about the Company's growth projections, its financial performance, its business plans (including the creation of intellectual property in connection with new services), and the financing of the Company.

12. Arbinet is informed and believes that at all times relevant to this Complaint Defendant Marmon was aware of Defendant Mashinsky's contractual obligations to Arbinet as well as Defendant Mashinsky's fiduciary duties owed to the Company based on his membership on the Board of Directors and his position as an executive officer of Arbinet.

**Defendants' Misappropriation of Confidential Arbinet Information**

13. Defendants, by jointly filing a preliminary proxy statement with the Securities and Exchange Commission on March 21, 2006 (as amended on April 10 and April 18, 2006), recently commenced a proxy contest seeking election of Defendants to Arbinet's Board of Directors, and seeking to award themselves up to 16 million options, or approximately 40% of Arbinet, if elected.

14. On April 11, 2006, members of Arbinet's Board of Directors attended a meeting with Defendants where Defendants discussed their reasons for launching the proxy contest and their proposed strategy for Arbinet.

5

15. At this meeting, Defendants had in their possession, and frequently referred to, a document titled "Assessment of Vertical Market Opportunities," dated September 2, 2001 and stamped copyrighted (the "Confidential Document"). Defendants held the Confidential Document in plain view so that the Directors could see it, and it was circulated around the conference table. At least four of the Directors reviewed it and noted the title, date and other characteristics of the Confidential Document. Arbinet has determined that the Confidential Document is, in fact, a sensitive Arbinet document of approximately 90 pages, bearing the same title as one created and owned by the Company dated September 20, 2000.

16. The Confidential Document, and any information contained therein, is clearly marked on each page as copyrighted material of Arbinet.

17. The Confidential Document contains an in-depth analysis of available market opportunities identified by Arbinet to expand and develop customer markets. It also describes potential tactical business initiatives and Arbinet's internal strategy for future market development and for future competitive positioning of Arbinet based on the market analyses contained in the Confidential Document. Among other things, this strategic and business planning document assesses a number of vertical markets and associated market strategies, discussing in detail the risks and benefits for Arbinet with each market and strategy. The Confidential Document examines topics critical to Arbinet's competitive position, and does so using various internal data, charts, tables and other technical diagrams. The Confidential Document reveals Arbinet's confidential market views, strategies and competitive position and would give a third party a view into the direction Arbinet seeks to head technologically and its marketing efforts in each area of its business.

18. Arbinet committed significant resources to the creation of the Confidential Document, which reflects the result of extensive work by Arbinet employees over a four-to-six month period. Specifically, that work was directed by Anthony Craig, current Chairman of Arbinet's Board of directors. The principal author of the Confidential Document was Arbinet employee Judah Levine, who reported to Defendant Mashinsky. The information in the Confidential Document continues to be a road map and resource for Arbinet's strategic decisions on technology, business segments and marketing.

19. The application of the market analyses contained in the Confidential Document to Arbinet's business is as relevant today as it was at the time the Confidential Document was created just a few years ago in 2000. Many of the market development opportunities identified in the Confidential Document require significant capital that Arbinet did not have available at the time the document was created. Access to that capital was delayed because of the constriction of the capital markets during the post Internet-bubble burst period – around the time that this internal strategic market analysis was created. Arbinet only now has the available capital to pursue and implement its strategy for several of the vertical markets studied in the Confidential Document. After Arbinet completed a $36 million round of financing in 2001, it had capital to pursue its business plan in certain of its markets, but not until its IPO in December 2004 did significant additional capital become available to the Company for implementing its strategy for additional vertical markets. The Confidential Document's analysis is directly relevant to Arbinet's current initiatives in these markets, which Arbinet is presently well-positioned to execute. Just this month, Arbinet is announcing its pursuit of certain of the vertical markets in the Confidential Document.

20. The Confidential Document is not public information. The specific information contained in the Document is not the type of information Arbinet reveals in any public filing, and it has not publicly disclosed that specific information in any manner. The information is sensitive business information that Arbinet has maintained as confidential and has used only internally, protecting it from disclosure to third parties. When Arbinet has discussed its vertical market opportunities with third parties, those parties have been subject to confidentiality agreements requiring them to keep these discussions confidential. Even though these parties have signed confidentiality agreements with Arbinet, Arbinet, nonetheless, has not shown these parties the contents of the Confidential Document or provided them with any information at the level of detail reflected in the document.

21. Arbinet does not have confidentiality agreements with its institutional investors that would prevent these third parties from disclosing confidential information they receive, or using it in a manner adverse to Arbinet's best interests. When discussing Arbinet's business with third parties not subject to confidentiality agreements, Arbinet discloses information consistent with its filings with the Securities and Exchange Commission or other public disclosures, none of which discloses the detailed sensitive information in the Confidential Document.

22. The vertical market analysis in the Confidential Document gives Arbinet significant advantages in its business, and would disadvantage Arbinet competitively if disclosed outside the Company. Arbinet will be harmed irreparably if its confidential business information is disclosed to competitors or to third parties who have no obligation to keep that information confidential.

23. At the April 11, 2006 meeting with the members of the Arbinet Board of Directors, Defendants brandished the Confidential Document in front of the Directors and

discussed the confidential and proprietary information contained in the Confidential Document. When questioned by Arbinet's directors about how they came into possession of that document and how they may have used the confidential and proprietary Arbinet information contained in that document, they admitted that they had disclosed this information to at least three third parties who own the public securities of the Company and who do not owe contractual duties of confidentiality to Arbinet to protect and preserve the information Defendants have wrongfully disclosed. Specifically, these third parties are institutional investors in Arbinet whom the Defendants identified by name. Arbinet is informed and believes that Defendant Mashinsky disclosed the Confidential Document to Defendant Marmon, both of whom had the document in their possession.

24. It is clear from their own admissions to the Arbinet Board members at this April 11, 2006 meeting that Defendants are using the confidential information for their own advantage and to Arbinet's detriment. As disclosed in their Preliminary Proxy Statement filed with the SEC, Defendants want to win a proxy battle and plan to award themselves up to 16 million options in Arbinet (or approximately 40% of the Company) if they succeed.

25. Defendant Mashinsky owes Arbinet a continuing duty not to use or disclose its confidential and proprietary information by virtue of his membership on the Board of Directors, his position as an executive officer of Arbinet, and his contractual obligations to Arbinet. Defendant Mashinsky's possession, disclosure and use of the Confidential Document and the information it contains is wrongful, a breach of his fiduciary and contractual duties, and a violation of Arbinet's rights. Defendant Marmon's possession, disclosure and use of the Confidential Document and the information it contains is wrongful and a violation of Arbinet's rights.

26. As soon as Arbinet became aware of Defendants' unlawful conduct, Arbinet sent a cease and desist letter dated April 13, 2006 to Defendants demanding that Defendants return to Arbinet and stop misusing the Confidential Document and any and all other non-public information of Arbinet wrongfully in their possession, custody or control, and also seeking that they identify in writing for Arbinet all such non-public information, including all such information disclosed to any third parties. Arbinet asked that Defendants respond to that April 13 letter by the close of business on April 17, 2006. Rather than respond in good faith to that letter, Defendants provided no written response to Arbinet on April 17. Rather, in an email to Arbinet's counsel on April 13, Defendant Marmon – without identifying any factual basis whatsoever – rejected Arbinet's assertion that Defendants were obligated not to use or disclose the Confidential Document and flatly refused to comply with any of the requests in the letter, which Arbinet had made with the goal of halting further dissemination of its confidential information and to assess the extent to which the Defendants had violated Arbinet's rights.

27. Defendants are well aware of the extent to which Arbinet protects its confidential information and takes steps to maintain such protection. In connection with the current proxy contest, Defendants both recently signed a confidentiality agreement with Arbinet promising to treat all materials obtained in connection therewith confidential. Between the two Defendants, they also have been parties to multiple investors' rights agreements, consulting agreements and settlement agreements with Arbinet that all require business or financial information of the Company's obtained by reason of the agreements to be kept confidential.

28. Defendants' disclosure and improper use of confidential and proprietary information to parties who do not have confidentiality obligations to Arbinet, has harmed and continues to harm Arbinet irreparably. It risks the information being revealed to competitors and

interferes with the duly-elected Board's determination of what strategy and direction are in the Company's best interest. The Board of Directors and management are charged with protecting the Company's and the shareholders' interests, including maintaining Arbinet's competitive advantage in the markets in which it competes. Defendants' conduct was without any legal basis or privilege, and as a direct and foreseeable result, Arbinet has suffered, and, unless Defendants are enjoined, continues to suffer, irreparable harm. Money damages are not an adequate remedy to compensate Arbinet for Defendants' wrongful conduct.

## **CLAIM I**
**(Breach of Contract against Defendant Mashinsky)**

29. Arbinet incorporates by reference the allegations set forth in the preceding paragraphs 1 through 28, as if fully set forth herein.

30. Defendant Mashinsky and Arbinet have a contractual relationship as set forth in the Settlement Agreement (the "Contract"), which explicitly confirmed Defendant's continuing confidentiality obligations from the Consulting Agreement.

31. The Contract constitutes a valid and enforceable agreement executed by the parties.

32. Arbinet has satisfied all of its obligations as set forth in the Contract.

33. By virtue of the aforementioned conduct, including disclosure of certain confidential information to outside parties without Arbinet's consent, Defendant Mashinsky is and continues to be in breach of the terms of the Contract.

34. As a direct and proximate result of Defendant's breach of the Contract, Arbinet has been irreparably harmed, and, unless and until Defendant Mashinsky is enjoined, will continue to be irreparably harmed.

## CLAIM II

### (Breach of Fiduciary Duty against Defendant Mashinsky)

35. Arbinet incorporates by reference the allegations set forth in the preceding paragraphs 1 through 34, as if fully set forth herein.

36. From November 1996 to May 2004, Defendant Mashinsky was a member of Arbinet's Board of Directors and received confidential and proprietary information of Arbinet during that time.

37. By virtue of Defendant Mashinsky's position as a Director of Arbinet, he was under a duty to (i) act in good faith; (ii) in a manner he reasonably believes to be in the best interests of the corporation; and (iii) with the care that an ordinarily prudent person in a like position would use under similar circumstances.  Defendant Mashinsky continued to have duties of confidentiality to Arbinet after ceasing his association with Arbinet in 2004.

38. Defendant Mashinsky has engaged in a course of conduct in knowing violation of the fiduciary duty he owed Arbinet, including improper use of Arbinet's confidential information obtained during his time as a Director and by virtue of his position as a Director.

39. As a direct and proximate result of Defendant's breach of his fiduciary duty, Arbinet has been irreparably damaged, and, unless and until Defendant Mashinsky is enjoined, will continue to be irreparably harmed.

## CLAIM III

### (Misappropriation of Trade Secrets and Confidential Business Information against both Defendants)

40. Arbinet incorporates by reference the allegations set forth in the preceding paragraphs 1 through 39, as if fully set forth herein.

41. The Confidential Document described above is a trade secret because it is a proprietary and confidential compilation of information used in Arbinet's business for purposes of giving Arbinet advantages over competitors.

42. By virtue of Defendant Mashinsky's position as a former Director of Arbinet, and Defendant Marmon's prior role at Arbinet and as an active participant with Defendant Mashinsky, Defendants had a detailed and comprehensive knowledge of Arbinet's trade secrets and other confidential business information, such as business plans, market information, development strategies, and financial information.

43. Arbinet's trade secrets and other confidential business information constitute Arbinet's proprietary information that it maintains in confidence, taking such steps as are reasonably necessary to preserve its confidentiality. This information is not known outside of Arbinet, it gives Arbinet significant advantages in its business and would be invaluable to any competitor of Arbinet.

44. Defendants' misappropriation and use of Arbinet's trade secrets and confidential information in support of their own personal goals, and their disclosure of such trade secrets and confidential information to others, is without Arbinet's express or implied authorization.

45. Defendants' use and disclosure of Arbinet's trade secrets and confidential information constitutes misappropriation of Arbinet's trade secrets and confidential information.

46. As a direct and proximate result of Defendants' misappropriation of the Confidential Document, Arbinet has been irreparably damaged, and, unless and until Defendants are enjoined, will continue to be irreparably harmed.

## CLAIM IV

**(Aiding and Abetting Defendant Mashinsky's Breach of Fiduciary Duty against Defendant Marmon)**

47. Arbinet incorporates by reference the allegations set forth in the preceding paragraphs 1 through 46, as if fully set forth herein.

48. At all times material to this Complaint, Defendant Marmon was aware of Defendant Mashinsky's former position on Arbinet's Board of Directors and otherwise, and corresponding fiduciary duties to keep non public information confidential.

49. Defendant Mashinsky's misappropriation of confidential Arbinet information constitutes an unlawful act of which Defendant Marmon was aware and in which Defendant Marmon participated and assisted.

50. By virtue of his partnership and acting in concert with Defendant Mashinsky in the proxy contest with Arbinet, and his combined presence at the presentations wherein Arbinet's confidential information was disclosed as discussed at the April 11, 2006 meeting with members of Arbinet's Board of Directors, Defendant Marmon knowingly and substantially assisted Defendant Mashinsky in Defendant Mashinsky's wrongful act of misappropriating and disclosing Arbinet's confidential and proprietary information.

51. As a direct and proximate result of Defendant Marmon's aiding and abetting, Arbinet has been irreparably damaged, and, unless and until Defendant Marmon is enjoined, will continue to be irreparably harmed.

## CLAIM V
### (Tortious Interference with Defendant Mashinsky's Contractual Obligations against Defendant Marmon)

52. Arbinet incorporates by reference the allegations set forth in the preceding paragraphs 1 through 51, as if fully set forth herein.

53. The Consulting Agreement and Settlement Agreement between Arbinet and Defendant Mashinsky are valid and binding contracts supported by valid consideration.

54. On information and belief, Defendant Marmon has knowledge of both the contracts between Arbinet and Defendant Mashinsky.

55. Defendant Marmon intentionally and maliciously interfered with Arbinet's contracts with Defendant Mashinsky by, and among other things, jointly participating in the meetings discussed at the April 11, 2006 meeting, in which meetings Defendants disclosed confidential Arbinet information. Defendant Marmon continues intentionally and maliciously to interfere with these contractual relationships.

56. As a direct and proximate result of Defendant Marmon's wrongful conduct, Arbinet has been irreparably damaged, and, unless and until Defendant Marmon is enjoined, will continue to be irreparably harmed

## CLAIM VI
### (Conversion against all Defendants)

57. Arbinet incorporates by reference the allegations set forth in the preceding paragraphs 1 through 56, as if fully set forth herein.

58. Defendants intentionally and wrongfully interfered with Arbinet's ownership and use of its confidential property and converted Arbinet's property and unlawfully took it as their own.

59. Defendants had no right to use Arbinet's confidential property in the manner described above.

60. As a result of Defendants' conversion of Arbinet's confidential property, Arbinet has been irreparably damaged, and, unless and until Defendants are enjoined, will continue to be irreparably harmed.

## CLAIM VII
### (Copyright Infringement against all Defendants)

61. Arbinet incorporates by reference the allegations set forth in the preceding paragraphs 1 through 60, as if fully set forth herein.

62. Arbinet's confidential information is copyrightable subject matter under 17 U.S.C. § 102.

63. Arbinet has complied in all respects with the Copyright Act and all other laws of the United States respecting copyrights and is therefore entitled to exercise all rights enumerated under 17 U.S.C. § 501 with respect to its copyrighted material.

64. Upon information and belief, Defendants have violated 17 U.S.C. § 501 by, at a minimum, reproducing, distributing and/or displaying Arbinet's copyrighted information without authorization from Arbinet.

65. Unless enjoined pursuant to 17 U.S.C. § 502, Defendants will continue to reproduce, distribute and/or display Arbinet's copyrighted information, thereby causing Arbinet irreparable harm.

### PRAYER FOR RELIEF

WHEREFORE, plaintiff Arbinet-thexchange, Inc. requests the Court award it injunctive relief, including an Order requiring Defendants Alexander Mashinsky and Robert Marmon to:

    (i) Cease using any and all information misappropriated from Arbinet,

including but not limited to all copies or derivative works prepared from such information that may be in Defendants' possession, custody or control;

   (ii) Return to Arbinet any and all information misappropriated from Arbinet, including but not limited to all copies or derivative works prepared from such information;

   (iii) Provide an accounting to Arbinet of each use Defendants have made of any and all information they have misappropriated from Arbinet (including but not limited to all copies or derivative works prepared from such information), including but not limited to each disclosure by Defendants of any such misappropriated information to any third party;

   (iv) Issue to each of the persons and entities referred to in the preceding sentence a corrective statement, in a form to be approved by Arbinet, requesting that any non-public information of Arbinet that Defendants have disclosed to such persons or entities be returned immediately to Arbinet and stating that Arbinet had not authorized Defendants' disclosure of such information to such persons or entities; and

   (v) Award Arbinet its fees and costs incurred as a result of this action, in addition to such other and further relief as the Court deems appropriate.

Dated: April 25, 2006

GOODWIN PROCTER LLP

By: /s/ Brian L. Wamsley
Brian L. Wamsley (BW 1439)
599 Lexington Avenue
New York, New York 10022
Tel: (212) 813-8800

Brian E. Pastuszenski
(pro hac vice admission pending)
Deborah S. Birnbach
(pro hac vice admission pending)
GOODWIN PROCTER LLP
Exchange Place
Boston, MA 02109
Tel: (617) 570-1000

Attorneys for Plaintiff Arbinet-thexchange, Inc.

## VERIFICATION

I, J. Curt Hockemeier, President and Chief Executive Officer of Arbinet-thexchange, Inc. attest that I have read the foregoing Verified Complaint and that the facts therein are true of my own personal knowledge, excepting only those allegations made upon information and belief, which I am informed and believe are true.

By: _____
J. Curt Hockemeier

STATE OF NEW JERSEY
COUNTY OF MIDDLESEX, ss.

Before me this 26th the day of April, 2006 appeared  J. Curt Hockemeier , to me known, who being duly sworn deposed and said that he is the President and CEO of Arbinet-thexchange, Inc.; that he has read the foregoing Verified Complaint; and that the facts therein are true of his own personal knowledge, excepting only those allegations made upon information and belief, which he is informed and believes are true.

By: _____
Notary Public
My Commission Expires:

PATRICE E. FEARON
Notary Public of New Jersey
My Commission Expires
May 19, 2007